**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| UNITED STATES OF AMERICA )<br><br>v.                                          )     CASE NO. 22-cr-83<br><br>ZACHARY WILLIAMS                )<br> | |

**ORDER DENYING MOTION TO SUPPRESS**

Defendant Zachary Williams moves this court to suppress tangible and electronic evidence seized following the execution of a search warrant at his home in New York City on or about March 17, 2021. ECF No. 79. Following execution of that warrant, Mr. Williams was indicted by a grand jury sitting in Hartford on four counts, including two counts of Aggravated Sexual Abuse with Children, both in violation of Section 2241(c) of Title 18 of the United States Code, one count of Production of Child Pornography in violation of Section 2251(a)(1) of Title 18 of the United States Code, and one count of Coercion and Enticement in violation of Title 18, United States Code, Section 2422(b). ECF No. 1. For the foregoing reasons, the motion to suppress is **DENIED.**

I. **BACKGROUND**

This case relates to similar offenses recently prosecuted in the District of New Jersey wherein a jury rendered a guilty verdict against the defendant.[1] On March 13, 2021, law enforcement arrested the defendant outside the Seaview Hotel in Galloway, New Jersey after a sting operation. On March 17, 2021, the Hon. Sarah L. Cave signed a warrant

---

[1] Defendant appealed his conviction from that judgment. *See* USA v. WILLIAMS, No. 1:22-cr-00325 (CPO) (D.N.J.), ECF Nos. 273 (jury verdict), 304 (notice of appeal), 306 (judgment).

authorizing law enforcement to search the defendant's residence in New York City and to seize, *inter alia*, electronic devices including cellular phones or computers. The affidavit in support of that search warrant (hereinafter "Casey Aff.") set forth several allegations, including that law enforcement arrested the defendant four days prior.[2] The evidence obtained leading up to and during the defendant's arrest, as well as items and electronically stored information (ESI) seized from his residence in New York City, form the basis for the proceedings in the District of New Jersey (now subject to appeal), the instant proceedings, and a third case pending in the Eastern District of New York.[3]

## II.    ALLEGATIONS IN THE AFFIDAVIT[4]

In or about September 2020, Mr. Williams began communicating with CV1[5] through Snapchat, a social media platform that is accessible via smartphone, tablet, or computer. Casey Aff. ¶ 7(a). CV1 informed the defendant she was thirteen years old. *Id.* Defendant continued communicating with CV1 for several weeks and requested nude photographs of her through multiple social media accounts. *Id.* ¶ 7(b). CV1 sent the defendant nude photographs and a video. *Id.*

Defendant then used those images as leverage to coerce CV1 to meet him. *Id.* ¶ 7(e). He threatened to release the images if she did not comply and promised to permit CV1 to delete the nude images of herself from his phone if she met him. *Id.*

---

[2] The affidavit was submitted by Special Agent Bernadette Casey of the Federal Bureau of Investigation.
[3] Jury selection in the third case against Mr. Williams is set for October 20, 2025. *USA v. Williams*, No. 1:22-cr-00449 (FB) (E.D.N.Y.)
[4] The court assumes the parties are familiar with the allegations in the Casey affidavit and the court repeats only those parts of the affidavit that are necessary to deciding Defendant's motion.
[5] The affidavit refers to her as Victim 1, but the court will use "CV1" to refer to this complainant, as the defendant has not yet been convicted of the charged offenses in the present case.

On or about October 2, 2020, Defendant travelled by bus from New York City to Atlantic City, New Jersey to meet CV1 at the Seaview Hotel.  Defendant engaged in unprotected sexual intercourse with CV1 in room 234.  *Id.* ¶¶ 7(g-h).  The defendant permitted CV1 to delete all the photos of herself.  *Id.* ¶ 7(h).

After their meeting, Defendant continued to harass CV1.  Defendant sent CV1 messages from several accounts on multiple social media platforms, including Snapchat and Instagram.  *Id.* ¶ 7(i).  Defendant utilized menacing username and/or handles, including "IWILLHURTYOU Iwill_h2021."  *Id.*  CV1 blocked Mr. Williams on Snapchat, but he switched mediums and continued to contact her through other social media platforms, namely Instagram.  *Id.* ¶ 7(j).

On December 8, 2020, the CV1's parents met with Galloway Township, New Jersey detectives.  *Id.* ¶ 7.  CV1 provided law enforcement with a picture of the individual she knew as "Zach."  *Id.* ¶ 7(k).

After the meeting with CV1's parents, law enforcement sought information to ascertain the identity of the man known as "Zach."  On or about December 18, 2020, detectives served a subpoena on the Seaview hotel to determine who rented the room 234 on October 2, 2020.  *Id.* ¶ 8(a).  The response to that subpoena indicated "Zachary Williams" booked the room through SnapTravel,[6] declined to provide identification at check-in, and provided two different credit card numbers to pay for the room and cover incidentals.  *Id.* ¶¶ 8(a)(i-iv).

---

[6] SnapTravel is a third-party hotel booking platform which "uses conversational AI to help its customers book hotels via messaging apps like Facebook Messenger, iMessage, and WhatsApp."  Karl Moore, Focusing On Profitability Turned Around The AI-Powered Travel Startup Snaptravel, Forbes (Aug. 1, 2020) (available at https://www.forbes.com/sites/karlmoore/2020/08/01/focusing-on-profitability-turned-around-the-ai-powered-travel-start-up-snaptravel/ (last visited May 11, 2025).

Armed with that information, police obtained Defendant's New York driver's license and compared its photograph to the one provided by CV1 – they matched. *Id.* ¶ 8(b). Defendant's New York license listed an address of 250 W. 24th St., Apt 2AE, New York City, New York – the Subject Premises. *Id.*

Defendant's identity was corroborated through other means. For example, detectives subpoenaed SnapTravel, revealing that the credit card used to the book the room at the Seaview belonged to the defendant, Zachary Williams. *Id.* ¶ 8(c)(i). Additionally, they were able to obtain his phone number and an email address. *Id.* Through a separate subpoena to Bancorp, detectives ascertained information indicating that the credit card used for incidentals at the Seaview belonged to Zachary Williams, as well. *Id.* ¶ 8(c)(ii). Those records also identified his social security number. *Id.*

Critically, detectives subpoenaed Snapchat, Charter Communications, and Facebook. *Id.* ¶¶ 8(c)(iii), 19. Those subpoenas revealed a connection between a Snapchat account which CV1 identified as being used by "Zach" (the defendant) and an IP address registered to the defendant at the Subject Premises, and also that the username z_ff192 was registered with the email address Zachary.williams7557@gmail.com, the same email address which was used on SnapTravel to book Room 234 at the Seaview Hotel. *Id.* The Facebook subpoena indicated connections between seven devices and the defendant's various Instagram accounts and handles. *Id.* ¶ 19.

The investigation entered a new phase. Law enforcement observed Instagram messages between CV1 and an account named "Makeadealormomfindsout." *Id.* ¶ 9.

4

With the permission of CV1's parents, law enforcement took control of her social media account, posed as CV1, and communicated with the defendant.

On March 5, 2021, detectives communicated with the defendant through his Instagram handle "Iwillgettheswitchback."  *Id.* ¶ 10(a).  Through a series of messages, Defendant referred to himself as a "child molestor [sic]," a "pediphile [sic]," and corroborated CV1's allegations that the two previously engaged in sexual intercourse.  *Id.*  in subsequent conversations, he indicated that he had a sexual relationship with an 11-year-old girl in Connecticut and that he recorded a sex tape with her.  *Id.* ¶ 13.

Defendant was arrested outside the Seaview Hotel on March 13, 2021, after investigators set up a fake meeting between himself and CV1.  *Id.* ¶ 11.  Pursuant to a search of the defendant, officers seized, *inter alia*, Plan B contraception, lubrication, and a cellular telephone.  *Id.* ¶ 12.

## III.    <u>LEGAL STANDARD</u>

The Fourth Amendment provides that, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.  "The basic purpose of this Amendment . . . is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *United States v. Jones*, 43 F.4th 94, 108 (2d Cir. 2022) (quoting *Carpenter v. United States*, 585 U.S. 296, 303 (2018)).  Its "text makes clear" that "the ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Lange v. California*,

594 U.S. 295, 301 (2021) (internal quotation marks and citation omitted). "That standard generally requires the obtaining of a judicial warrant" before a law enforcement officer can enter a home without permission." *Id.* at 301.

No warrant may issue without probable cause. "Probable cause 'is not a high bar.'" *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (internal quotation marks and citation omitted). Rather, it is "a fluid concept turning on the assessment of probabilities in particular factual contexts, and as such is not readily, or even usefully, reduced to a neat set of legal rules." *United States v. Raymonda*, 780 F.3d 105, 113 (2d Cir. 2015) (internal quotation marks and citations omitted). The determination requires only "a *practical, common-sense decision*" as to that probability, "given all the circumstances set forth in the affidavit." *United States v. Martin*, 426 F.3d 68, 74 (2d Cir. 2005) (emphasis in original). "Due to this subjective standard, a reviewing court generally accords substantial deference to the finding of an issuing judicial officer that probable cause exists, limiting our inquiry to whether the officer had a substantial basis for his determination." *Raymonda*, 780 F.3d 113.

Further, there must be a sufficient nexus between the alleged criminal activity and both the places to be searched and the items to be seized. *United States v. Clark*, 638 F.3d 89, 94 (2d Cir. 2012); *see also* 2 Wayne R. Lafave et al., *Search & Seizure* § 3.7(d) (6th ed. Nov. 2024 update). "A showing of nexus does not require direct evidence and may be based on reasonable inference from the facts presented based on common sense and experience." *United States v. Singh*, 390 F.3d 168, 182 (2d Cir. 2004) (internal quotation marks omitted).

IV.    **DISCUSSION**

A. **Probable Cause to Search Defendant's Residence**

The crux of Defendant's argument is that nothing within the four corners of the search warrant supports that he used his home to facilitate any alleged crimes. That absence, he argues, renders insufficient the nexus between the alleged criminal activity and both the things to be seized, and the place to be searched. *See Clark*, 638 F.3d 94.

Here, Defendant understated several facts set forth in the Casey Affidavit that give rise to probable cause that evidence, fruits, and instrumentalities of the subject offenses would be found in his apartment. For example, Detectives analyzed Defendant's social media activity and traced it to his home IP address. *See* Casey Aff. ¶¶ 8(c)(iii), 18. The allegations in the affidavit set forth numerous instances in which the defendant communicated with CV1 through social media, including references to child molestation and child pornography. *Id.* ¶¶ 10(a-b), 13. These circumstances support a common-sense probability that evidence of Defendant's communications with CV1 or child pornography would be found at his residence. *See United States v. Thomas*, No. 5:12-cr-37 (CR), 2012 WL 4892850, 2012 U.S. Dist. LEXIS 147981 *9-11 (D. Vt. Oct. 15, 2012) *aff'd* United States v. Thomas, 788 F.3d 345 (2d Cir. 2015); *see also United States v. Chamberlin*, No. 09-cr-6169 (MWP) (CJS), 2010 WL 1904500, 2010 U.S. Dist. LEXIS 47664, *21-22 (W.D.N.Y. May 12, 2010) (collecting cases), *report and recommendation adopted*, No. 09-cr-6169 (CJS) (MWP), 2010 WL 2287562, 2010 U.S. Dist. LEXIS 53895 (W.D.N.Y. June 2, 2010).

The affidavit established that Defendant knowingly possessed illegal digital material depicting sexual intercourse with an 11-year-old child from Connecticut, thus establishing probable cause to search his residence.  Casey Aff. ¶ 13.  "It is well known that images of child pornography are likely to be hoarded by persons interested in those materials in the privacy of their homes."  *United States v. Irving*, 452 F.3d 110, 125 (2d Cir. 2006) (internal quotation marks and citation omitted). Further, the affidavit devotes significant attention to the habits of sex offenders, including that they collect and hoard pornographic materials.  Casey Aff. ¶¶ 6(f-g) ("offenders may store material on a variety of digital items" and "back-up or keep material on numerous devices. . .to insure they do not lose the material").  That Defendant admitted to possessing pornographic material depicting sex with a minor, and that he also collected and possessed CV1's nude images, creates a reasonable probability that he kept such materials in his home.

Further, it is hardly conclusory to have determined that Defendant likely possessed additional pornographic material.  After all, CV1 deleted nude photos off Defendant's phone, only for Defendant later to have threatened publication of those photos.  *See* Casey Aff. ¶¶ 7(c), 7(h), 7(j).  That allegation makes it more likely that Defendant maintained a back-up of those nude photos and possessed other child pornography, particularly given his possession of a video depicting intercourse with an 11-year-old child.  *See United States v. Smith*, 108 F.4th 872, 879 (D.C. Cir. 2024) ("[Defendant] could well have transferred evidence of his conduct onto multiple devices. He might have done so in the normal course of cycling through devices, or he might have wanted to make backup copies of photos or disperse evidence across multiple devices.").

Detectives' investigation revealed several distinct devices had accessed the defendant's social media accounts supporting probable cause to search his residence. Casey Aff. ¶ 19.   It is common sense that people typically maintain their personal electronic devices (computers, tablets, and phones) at their home, if not on their person. *See United States v. Peterson*, 294 F. Supp. 2d 797, 806 (D.S.C. 2003), *aff'd*, 145 F. App'x 820 (4th Cir. 2005) (noting the "common sense argument that computers are usually stored in the home, provid[ing] a sufficient nexus between defendant's residence and the evidence observed on the computer."); *United States v. Kapordelis*, 569 F.3d 1291, 1312 (11th Cir. 2009) ("Using common sense in evaluating the facts, the necessary 'nexus' existed between the facts surrounding Defendant's travel to Russia, the facts which suggested that he met and engaged in sexual activity with young boys and the assertion that evidence of sex tourism and child pornography would be found in Defendant's home.").   After all, the association between child pornography and personal electronic devices is particularly strong and the allegations in the affidavit certainly establish a nexus between the items sought and the particular place to be searched.   *United States v. Pinto-Thomaz*, 352 F. Supp. 3d 287, 306 (S.D.N.Y. 2018) (holding the nexus between the items sought and the particular place to be searched may be based on reasonable inference from the facts presented based on common sense and experience) (internal citation and quotation marks omitted).

Based on the totality of the circumstances, the four corners of the warrant established probable cause to search Defendant's residence.   *Singh*, 390 F.3d at 182; *United States v. Young*, 2025 WL 1066082, 2025 U.S. App. LEXIS 8328, *7 (2d Cir. Apr. 9, 2025) (summary order) (affirming denial of motion to suppress where the warrant application

included conversations between a minor and the defendant referencing child molestation, ownership of a social media account, and that defendant's IP address).

B. **Probable Cause to Search Defendant's ESI**

In the alternative, Defendant moves the court to suppress the search of the electronic devices seized during the search of the premises because the affidavit contains no specific facts that devices with electronically stored information, on a cellphone, computer, or otherwise, were used in relation to or in furtherance of any crime.

Courts in this Circuit routinely recognize the role of a law enforcement officer's training and expertise in evaluating probable cause. *United States v. Gaskin*, 364 F.3d 438, 457 (2d Cir. 2004); *United States v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985); *see Kaskel v. Compagnone*, 664 F. App'x 109, 111 (2d Cir. 2016) (finding that probable cause "must be evaluated in light of the training and experience of the investigating agent"); *United States v. Gumbs*, No. 23-cr-62 (OAW), 2025 U.S. Dist. LEXIS 7720, 2025 WL 99796, at *3 (D. Conn. Jan. 15, 2025).

The affiant's training and expertise buttressed the factual allegations in the application to establish probable cause to search Defendant's electronic devices. Without belaboring the point, the court finds that Defendant's communications with CV1 through his social media accounts, the connection between his Snapchat account and his home,[7] and his admission that he possessed a video of an 11-year-old child engaging in sex acts, that he possessed nude photos from CV1 which were transmitted through social media accounts, and that investigators identified additional electronic devices that connected to

---

[7] Defendant requested nude photos through Snapchat from CV1. Casey Aff. ¶ 7(b).

Defendant's social media accounts, in addition to the affiant's training and expertise, established probable cause to search the defendant's electronic devices.

## C. Good Faith Exception

Even if the court were to find that the application was deficient, the allegations contained therein nonetheless would trigger the good faith exception, as the officers' reasonable reliance on the warrant was objectively reasonable. *United States v. Leon*, 468 U.S. 897 (1984). Evidence obtained in searches conducted pursuant to defective search warrants nonetheless may be admissible if reasonable officers would have believed the warrants (and therefore the searches) complied with constitutional requirements. *Leon*, 468 U.S. at 922; *Massachusetts v. Sheppard*, 468 U.S. 981, 987-88 (1984). Suppression ought to be a court's last resort, not its first impulse. *United States v. Clark*, 638 F.3d 89, 99 (2d Cir. 2011) (citing *Herring v. United States*, 555 U.S. 135, 140 (2009)).

For the good faith exception to be inapplicable, the warrant must be "so facially deficient" or the affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon,* 468 U.S. 923. That is, officers cannot claim a reasonable belief and invoke the good faith exception under certain circumstances. "[T]he Supreme Court in *Leon* delineated several situations in which the good-faith exception does *not* apply: (1) the magistrate or judge was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing magistrate wholly abandoned his judicial role; (3) a warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) a warrant is so

11

facially deficient that officers cannot reasonably presume it to be valid. *United States v. Jones*, 43 F.4th 94, 112 (2d Cir. 2022).

None of the four circumstances is present here. There is no evidence that the magistrate judge was misled by information in an affidavit, nor that the judge abandoned her judicial role. Instead, the defendant argues that the application was so lacking in probable cause that an objectively reasonable officer could not believe that Defendant's residence had evidence of a crime. The court disagrees. The affidavit set forth specific allegations and included a tether between Defendant's residence and his social media activity, namely his IP address.

The court also declines Defendant's request for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).

## V.    **CONCLUSION**

Accordingly, it is thereupon **ORDERED AND ADJUDGED** Defendant's motion to suppress (ECF No. 79) is **DENIED.**

**IT IS SO ORDERED** in Hartford, Connecticut, this 14th day of May, 2025.

_____/s/_____
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE