UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---------------------------------------------------------------------------------- X

UNITED STATES OF AMERICA,

       - against –    22 CR 00083 (OAW)

ZACHARY WILLIAMS,

               Defendant.

---------------------------------------------------------------------------------- X

**SENTENCING MEMORANDUM OF DEFENDANT ZACHARY WILLIAMS**

                                            Francis L. O'Reilly, Esq.
                                            1735 Post Road, Suite 2C
                                            Fairfield, CT 06824
                                            Tel. 203-913-4608
                                            Frankoreilly9@gmail.com

                                            Diane Ferrone, Esq.
                                            1325 Avenue of the Americas, 28th Fl.
                                            New York, NY 10019
                                            Tel. (646) 337-9010
                                            diane@dianeferronelaw.com

I.   **PRELIMINARY STATEMENT**

Defendant Zachary Williams respectfully submits this memorandum in aid of his sentencing, scheduled for November 24, 2025. For the reasons set forth below, it is respectfully requested that the Court impose upon Zachary a below Guidelines sentence of 180 months, five years supervised release and a recommendation that he be placed in the BOP's Residential Drug Abuse Program ("RDAP").

Zachary accepts full responsibility for his actions, and nothing herein is intended to minimize or excuse his conduct. He regrets his actions and understands the pain and harm he has caused the victims. While battling his own demons, Zachary engaged in illegal and inappropriate conduct. He recognizes and accepts that he has already been and will continue to be seriously punished for his behavior.

As in many of cases before the Court, a defendant's personal history and background inform how an individual finds themselves in their current situation. Zachary has not had an easy life. His childhood and adolescence were filled with neglect, abandonment, instability, abuse and trauma. He has received no real therapy to address the emotional ▒▒▒▒▒▒▒▒▒▒ to which he has been exposed. We also believe that Zachary has serious, undiagnosed mental health conditions.

It is against this backdrop, and in light of all of the factors enumerated in 18 U.S.C. § 3553(a), discussed in more detail below, defense counsel respectfully submits that a sentence of 180 months is "sufficient but not greater than necessary," to meet all of the sentencing goals embodied in 18 U.S.C. § 3553(a).

## II.     BACKGROUND

### A.     Zachary Williams' Personal History

Zachary Williams was born to a mentally ill bi-polar woman who did not want to be mother. As a young child, Zachary learned that his mother had told several people she wanted to abort him. When she got pregnant, she asked Zachary's father to marry her. He said no and she attacked him with a hammer. The two stopped dating and had very little contact after that incident. As a result, Zachary's father was mostly absent from his life. Home life with his mother was highly chaotic for Zachary. Due to her mental illness, she was constantly yelling and cursing at him as a small child. Zachary recalls being around five years old and she would come home from work and make him do yard work outside in the middle of the night. His mother gave him such anxiety as a young child that Zachary would pull out his hair and bite his nails until they bled (a habit that persists to this day). Zachary described to Probation that living with his mother was "like hell." PSR at ¶ 100.

When Zachary's mother was not yelling at him, she was completely neglecting him. He was often left alone to fend for himself at a very young age. After Zachary's grandmother noticed he was being left alone so often, his mother would hire random babysitters to watch him.

Zachary's mother also didn't always provide basic necessities to her son, including food. Zachary remembers many times his mother did not give him lunch money for school and he

would often go without lunch. Teachers noticed, however, and Zachary remembers receiving "free" lunch at school. Zachary also recalls one time his grandmother came over and saw teeth marks in the butter and inquired about the last time he had been fed. Indeed, his mother's neglect was so bad that when Zachary was eight years old, his grandmother went to court and obtained custody of him. Zachary's grandmother confirmed to Probation his mother's bi-polar disorder and "volatile" nature. PSR at ¶ 108. Zachary's grandmother also confirmed his mother treated him poorly by calling him names and neglecting him. See id. Life improved when Zachary lived with his grandmother, which he did until he was 17, but unfortunately the trauma that he endured did not suddenly disappear.

Zachary met his father for the first time when he was 11 years old. They, however, did not have regular contact or build a father-son relationship until Zachary was 17 years old. Zachary's grandmother did not like the crowd Zachary was hanging out with or that he had begun smoking marijuana. She sent him to military school, but Zachary got kicked out for fighting. At age 17, Zachary moved into his father's house. It was initially very odd for Zachary, because his father was a stranger to him. At this point in his life, Zachary's father was a recovering crack cocaine addict. Zacahry, however, felt a little bit of normalcy living with a father, stepmother and stepsiblings, however, when Zachary stopped going to school, his father kicked him out of the house.

Over the next few years, Zachary moved around a lot. He left his father's house and went back to his grandmother's house for a bit. Zachary then went to live with an uncle who lived above a bar that he owned. Zachary worked at the bar while he lived with his uncle. Zachary then lived with his grandfather for a period of time, but he was verbally abusive and Zachary did not stay with him for long. Zachary then went to live with a friend for the next two years. Zachary

3

had begun attending college, but the friend that he lived with was a drug dealer and user and Zachary began using drugs more regularly. Zachary ended up failing out of college because of his drug use.

    Zachary then moved to New York. He didn't have a dime to his name but wanted to start a new life. He was homeless for the next year. He lived on picking cans up off the street. At some point he joined the Occupy Wall Street movement just because it was a place to stay. Zachary drank a lot during that period of time and became hooked on K-2. ███

███

███ As you might imagine, this lifestyle has left deep emotional scars on Zachary.

    Zachary's family has a history of gambling addiction. Zachary's grandfather's gambling was so bad it led to this divorce from Zachary's grandmother. Zachary's father introduced Zachary to gambling when he was 17. And Zavhary's uncle, who Zachary lived with for a period of time was a bookie. Zachary's gambling problem began after he moved to New York. He would often lose so much money that he would not be able to pay rent. Zachary's gambling loses usually were always accompanied by heavy drinking. During the pandemic, Zachary's drinking and gambling hit its high point.

███

███
███
███
███

4

███████████████████████████████████████████

████████████████████████████████

███████████████████████████████████████

█████████████████████████████████████████

████████████████████████

### B. The Presentence Report and the Sentencing Guidelines

Mr. Williams objects to certain enhancements in the presentence report. First, Mr. Williams objects to the two-point enhancement for use of a computer, pursuant to U.S.S. 2G1.3(b)(3)(A). See PSR at ¶ 58. The evidence proffered by the government in this case is from phones, not computers. See United States v. Kohlmeier, 858 Fed. App'x 444, 446 (2d Cir. 2021) ("First, § 2G1.3(b)(3)(A) applies only when the offense involves the use of a computer in the commission of the sex offense.").[1]

With regard to acceptance of responsibility, Mr. Williams is of the position that he should be afforded all three acceptance points. As an initial matter, in the government's August 6, 2025 Pimentel letter, dated two days before his guilty plea, the government noted "Assuming the defendant qualifies at the time of sentencing, *three* levels are subtracted under U.S.S.G. §3E1.1 for acceptance of responsibility." (emphasis added). Yet, in its November 7, 2025 letter to Probation, the government writes "The Government will not be filing a motion under U.S.S.G. § 3E1.1(b) given that Mr. Williams pleaded guilty after substantial efforts had already been undertaken to prepare for trial, including the briefing of motions *in limine*, witness and trial preparation, and two full days of jury selection." While Mr. Williams acknowledges that a government motion is a prerequisite to the granting of a third point reduction, "[i]n two

---

[1] The Second Circuit has not yet addressed the question of whether smartphones constitute a computer under 18 U.S.C. 1030(e)(1).

5

circumstances, however, a sentencing court is permitted to grant the additional point reduction despite the absence of a government motion: (1) where the government's refusal to move is based on an unconstitutional motive, or (2) where a plea agreement leaves the decision to move to the government's discretion and the government acts in bad faith." United States v. Lee, 653 F.3d 170, 173 (2d Cir. 2011) (citation omitted). While Mr. Williams is not contending the government is acting in bad faith, we do note that the government's Pimentel letter anticipated making the motion for the third point. Also, in its letter to Probation, the government notes "The Government further reserves its right to challenge whether Mr. Williams is entitled to a 2-point reduction for Acceptance of Responsibility under U.S.S.G. § 3E1.1(a) based on part on certain remarks made by Mr. Williams at his sentencing in the District of New Jersey and his change of plea hearing in this case." Mr. Williams will respond to these arguments, should they be made, after the government submits its sentencing submission.

Finally, Mr. Williams agrees with the criminal history set forth in the government's Pimentel letter, which has him in a Criminal History Category II. He is currently appealing his New Jersey conviction and believes that it will be reversed on a appeal due to a significant legal error and thus, it would be inappropriate to consider that conviction in sentencing him in the instant case.

### III.     Applicable Sentencing Law

As the Court is well aware, the Sentencing Guidelines are advisory and while they serve as one of many factors to be considered, the inquiry does not end there. When imposing sentence, the Court is required to consider the factors set forth in 18 U.S.C. § 3553(a) in order to create an "individualized assessment" based on a defendant's particular circumstances. Gall vs. United States, 552 U.S. 38, 49-50 (2007); see also United States v. Cavera, 550 F.3d 180, 189

(2d Cir. 2008) (en banc).[2] The result is that "[a] sentencing judge has very wide latitude to decide the proper degree of punishment for an individual offender and a particular crime." Cavera, 550 F.3d at 188.

The Court has ample discretion to impose a below-Guidelines sentence. See Kimbrough v. United States, 552 U.S. 85, 101-10 (2007). In doing so, the Court may consider, and rely upon, any information available concerning the background, character, or conduct of the defendant. See Cavera, 550 F.3d at 189-91; see also 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense for which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.").

Moreover, in making an "individualized assessment," the Court is not only empowered to impose a sentence below the Guidelines range, it is required to do so where a lower sentence would be sufficient to comply with the purposes of Section 3553(a). See, e.g., United States v. Dorvee, 616 F.3d 174, 183-84 (2d Cir. 2010); United States v. Ministro-Tapia, 470 F.3d 137, 142 (2d Cir. 2006). Moreover, the Guidelines carry no presumption of reasonableness. As noted in Nelson v. United States, 129 S. Ct. 890 (2009), where the Court summarily reversed the Fourth Circuit which had upheld a district court's application of a presumption of reasonableness to the guidelines:

---

[2] The relevant factors are: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed" to, inter alia: provide just punishment, deter criminal conduct, protect the public from any future crimes by the defendant, and provide the defendant with rehabilitative training and treatment; (3) "the kinds of sentences available"; (4) "the kinds of sentence and the sentencing range established" for the offense; (5) "any pertinent policy statement"; (6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; and (7) "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a).

> [t]he Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable.

Id. at 892 (emphasis in original). Thus, the guidelines are now only one factor to be considered in the formulation of a minimally sufficient individualized sentence.

This view is consistent with the long-standing principle that a Court consider "every convicted person as an individual" and that "the punishment should fit the offender and not merely the crime." Pepper v. United States, 562 U.S. 476, 487-88 (2011). In sum, the overarching task of a sentencing court is to fashion a sentence that is appropriate for the individual circumstances of the offense and the defendant, and is "sufficient, but not greater than necessary" to achieve the statutory goals of punishment, deterrence, and rehabilitation. 18 U.S.C. § 3553(a).

**IV.   A Review of the Section 3553(a) Factors Weighs in Favor of a Sentence of 180 Months**

The Court is bound by the dictate of 18 U.S.C. § 3553(a) to "impose a sentence sufficient, but not greater than necessary" to comply with the purposes of sentencing. Consequently, as the Second Circuit explained in United States v. Ministro-Tapia, 470 F.3d 137 (2d Cir. 2006), if the Court believes a lower sentence will be as effective as a higher sentence in serving the purposes of sentencing, it must choose the lower sentence. See id. at 142 (where a Guidelines sentence is "in equipoise with [a] below-the-range sentence," the parsimony clause requires imposition of the lower sentence). Here, we respectfully submit that when addressing the offense conduct, which we readily admit is serious, the Section 3553(a) factors should drive the sentenced imposed and not the Guidelines range.

A. **Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

Mr. Williams respectfully submits that the nature and circumstances of the offense as well as his history and personal characteristics all counsel in favor of the requested sentence. See 18 U.S.C. § 3553(a)(1).

While the offense conduct is extremely serious, ▇▇▇ which often results in a range of negative and determinantal psychological and behavioral effects. While not seeking to excuse his behavior, ▇▇▇ ▇▇▇ [3] Moreover, Zachary's mother suffers from bi-polar disorder. It is very likely that Zachary himself has some undiagnosed mental health disorders. The Court has observed firsthand Zachary's outbursts and manic episodes. While he was put on medication briefly while in custody, he is currently not prescribed any medication and not receiving any meaningful mental health treatment.

As a child, Zachary lacked a stable, loving or supportive home life. Instead, his mother was truly awful to him. When she wasn't mistreating him, she was neglecting him. The neglect was so bad that Zacahry's grandmother went to Court to get custody of him. ▇▇▇ ▇▇▇ Zachary has never dealt with this trauma in a professional setting.

Zachary has accepted responsibility. He has pleaded guilty. As a result, there will be no trial and the minor victim and her family have been spared having to go through a trial.

---

[3] ▇▇▇

We also think that despite the behavior the Court has witnessed, Zachary deserves credit for proffering with the government and admitting to his conduct.

### B. The Need for the Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law and Provide Just Punishment

Subsection (2)(A) of Section 3553 provides that the Court should consider the need for the sentence it imposes "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553 (a)(2)(A). This section of the Code essentially asks the Court to consider the defendant and his actions holistically, and to "provide just punishment" in light of all the facts known to the Court. Id.

As an initial matter, it is respectfully submitted that a Guidelines sentence is not necessary to achieve the aims of sentencing. As the Court of course knows, "[t]he Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable. Nelson v. United States, 129 S. Ct. 890, 892 (2009) (emphasis in original). Here, we submit that the Guidelines in this case stand contra to the long-standing principles that a Court consider "every convicted person as an individual" and "the principle that the punishment should fit the offender and not merely the crime." Pepper v. United States, 562 U.S. 476, 487-88 (2011).

In taking into account Mr. Williams' tragic and traumatic background, it is respectfully submitted that a sentence of 180 months for the offense conduct reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense. Certainly, 15

years is not an insignificant sentence for a defendant who has accepted responsibility for his actions and pleaded guilty. A Guidelines sentence exceeds what is necessary to achieve these goals of sentencing. Moreover, as the Court is aware, Mr. Williams is already serving a sentence in a New Jersey case and has a pending case in the Eastern District of New York.

### C.   Deterrence

Another factor listed in 18 U.S.C. § 3553(a)(2) is to "afford adequate deterrence from criminal conduct" and "to protect the public from further crimes of the defendant." 18 U.S.C. §§ 3553(a)(2)(B) & (C). The first factor contemplates generally deterring the public from committing crimes similar in nature to those in which the defendant has engaged. The second focuses on deterring the defendant himself from committing future crimes. Zachary submits that both general and specific deterrence will be adequately met in this case.

General deterrence has been satisfied. Mr. Williams has been charged with a serious crime and has entered a guilty plea. The requested multi-year sentence will encourage the general public not to participate in similar crimes. There is no further general deterrence[4] achieved by incarcerating Mr. Williams to more than the requested sentence.

Section 3553(a)(2)(C) focuses on specific deterrence of further criminal conduct by the defendant himself. It requires the Court to consider the need "to protect the public from further crimes of the defendant." Here, it is respectfully submitted that specific deterrence will be achieved with the requested sentence. Mr. Williams desperately needs treatment. He will be

---

[4] In addition, the efficacy of harsh sentences as "general deterrents" is questionable. Social science appears to undermine the notion that prison sentences will deter others from committing similar crimes. See Amy Baron-Evans, Sentencing by the Statute, pp. 7-9 (April 27, 2009, revised Dec. 21, 2010) ("…potential criminals … do not believe [that] they will be apprehended and convicted," and therefore, they do not "consider sentence consequences in the manner one might expect of rational decision makers") (citing Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A review of Research 28-19 (2006)), a copy of Ms. Baron-Evan's article can be found at https://nyn.fd.org/content/sentencing-statute-amy-baron-evans-2009.

incarcerated for a very long time, during which we hope that he gets the appropriate care, counseling and rehabilitation. Zachary has expressed remorse for his actions and as recounted by Probation:

> He added that he is "horrified" by his actions and is "very remorseful." Mr. Williams added that he is also remorseful for the way he acted in court and apologized for his behavior. His future goals are to "try to make up for [his] actions," and to help others by helping to track down other child abusers.

PSR at ¶ 119. Zachary is 38 years old and at a point in life where he not only understands, but also accepts, that only by attending regular mental health counseling, can he lead a productive life. Zachary is committed to rehabilitating himself. A more severe sentence than what is requested is not necessary for either general or specific deterrence.

## CONCLUSION

For all the foregoing reasons, Zachary Williams respectfully requests that the Court impose a sentence on him of 180 months imprisonment.

Dated: November 16, 2025

Respectfully submitted,

/s/ Francis L. O'Reilly CT17505
Francis L. O'Reilly, Esq.
1735 Post Road, Suite 2C
Fairfield, CT 06824
Tel. 203-913-4608
Frankoreilly9@gmail.com

/s/ Diane Ferrone ct31506
Diane Ferrone, Esq.
1325 Avenue of the Americas, 28th Fl.
New York, NY 10019
(646) 337-9010
diane@dianeferronelaw.com

*Attorneys for defendant Zachary Williams*

## **CERTIFICATION**

THIS IS TO CERTIFY that on November 16, 2025 a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/Diane Ferrone ct31506